IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING, YELLOWSTONE NATIONAL PARK

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Gregory G. Costanza,<br><br>Defendant. | Case No. L:22-po-00702-SAH-1<br><br>Hon. Stephanie A. Hambrick<br><br>BRIEF SUPPORTING DEFENDANT GREGORY COSTANZA'S MOTION TO DISMISS<br><br>Fed. Rule Crim. P. 12(b)(2) |

COMES NOW Defendant Gregory G. Costanza ("Costanza"), with this Brief in support of his Rule 12(b)(2) Motion to Dismiss, and states as follows:

### PRELIMINARY STATEMENT

Plaintiff United States of America (the "Government") cannot meet its burden of proof as a matter of law and as articulated in the indictment or information because the Government's case is based on one incomplete statement by then-concussed Defendant to the non-charging officer. A finer probe of the facts

reveals that Defendant did not commit a "less serious than reckless driving" offense the night of the accident when he tragically struck bison. 36 CFR § 4.22(a). Here, the operative facts are undisputed, the district court may consider additional undisputed facts presented herein, and the district court can determine from these facts that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. The undisputed evidence shows that Costanza could not have committed the offense of unsafe operation of a motor vehicle for which he was indicted and therefore this case should be dismissed.

## LEGAL STANDARDS

### Rule 12(b)

Fed. R. Crim. P. Rule 12 authorizes the district court to resolve before trial only those motions "that the court can determine without a trial of the general issue." *United States v. Pope,* 613 F.3d 1255, 1259 (2010); Fed.R.Crim.P. 12(b)(2). In a criminal case, the "general issue" is "defined as evidence relevant to the question of guilt or innocence." *Id.* (citing *United States v. Yakou*, 428 F.3d 241, 246 (D.C.Cir.2005) (quotation marks omitted)).

Thus, the Supreme Court has instructed, Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the

validity of the defense." *Id. (*citations omitted). If *contested facts* surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial. *Id.* (emphasis added).

Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994) (citing *United States v. King*, 581 F.2d 800, 802 (10th Cir.1978)). "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.* (citing *United States v. Sampson*, 371 U.S. 75, 78-79, 83 S.Ct. 173, 174-75, 9 L.Ed.2d 136 (1962)). Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency. *Id.*

Notwithstanding these general principles, the Tenth Circuit has upheld pretrial dismissal under Rule 12(b) based on the insufficiency of the evidence where the underlying facts were essentially undisputed and the government failed to object to the district court's resort to evidence beyond the four corners of the indictment. *United States v. Hall, 20 F.3d* at 1087. Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have

committed the offense for which he was indicted. *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir.2006).

### 36 CFR 4.22(b)(1). Unsafe Operation

The charging offense states:

The following are prohibited:

(1) Operating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character.

## DISCUSSION

A careful review of the undisputed facts in this matter reveal that Defendant was charged based on a mistaken inference drawn by the responding officers about Defendant's speed at the time the bison were struck by Defendant. This court may dismiss this matter because Costanza could not have committed the unsafe operation of the vehicle because the responding officer's inference about Defendant's speed is wrong and unwarranted.

**1.  The Government's indictment should be dismissed under Rule 12(b)(2) because undisputed facts establish that Costanza could not have committed the offense for which he was indicted – the unsafe operation of a motor vehicle.**

The Government's case against Defendant under § 4.22(b)(1) is built around a statement of probable cause by Ranger Shelby Barbay ("S. Barbay") with

supporting body camera footage taken by "another Ranger." On October 7, 2022 before 10:00 am, Defendant spoke with this other Ranger, who is identified in the Government's Supplementary Report as "Barbay, A" (herein, "A. Barbay"). See *Defendant's Exhibit 1*. Defendant hereby stipulates to the accuracy and admissibility of A. Barbay's body camera footage taken on October 7, 2022, as Defendant has no reason to suspect that this footage would have been altered or mishandled by the Government. Defendant also stipulates to the admissibility of the supplemental report and the photo log for purposes of this Motion to Dismiss.

A careful review of A. Barbay's Supplementary Report confirms certain undisputed facts of this case and generally reflects the discussion from the body camera. *Defendant's Exhibit 1*. A. Barbay reports: "Costanza told me he was at a conference in Jackson and was heading home to Cody." This is undisputed by Defendant. Defendant was heading home from Jackson the night of October 6, 2022. *Declaration of Costanza, ¶¶ 1-3*. The accident occurred in the vicinity of Elk Ranch Flats on Highway 89. *Id., ¶¶ 1, 4*.

A. Barbay further reports: "He had seen some elk and slowed down then began to speed up when he hit the bison." *Exh. 1, Supplementary Report of A. Barbay*. This is undisputed by Defendant but warrants further explanation and examination. The night of the accident, Defendant was driving away from Jackson generally going

55 mph. *Declaration of Costanza, ¶ 5.* Prior to the accident, Defendant saw almost a dozen elk streaming from west to east across the road, causing Defendant to almost stop his vehicle, thus decelerating from around 50-55 mph to 5-10 mph before the elk quickly cleared from the road. *Id.* at ¶ 6. Defendant then began to speed up, but at a much-reduced maximum speed. *Id.* at ¶ 7. Defendant estimates he was going no faster than 40-45 mph after accelerating past the elk. *Id.* at ¶ 7. A. Barbay then reports that, "He estimated he was going 55-60 mph when he hit the bison." To the extent Ranger A. Barbay drew this conclusion from Defendant's statements regarding his speed of travel from Jackson after slowing down for the elk and then speeding back up, she is mistaken. Her inference or interpretation is not warranted.

With the benefit of hindsight and a memory not quite as afflicted by a diagnosed mild concussion post-accident, a more complete description of the accident can be provided by Defendant. After accelerating post-elk slow-down, Defendant recalls experiencing unexpected difficulty with his night vision. *Declaration of Costanza, ¶* 8. Specifically, Defendant recalls experiencing heightened retinal photobleaching after passing several vehicles and the blinking "45 mph" sign. *Id.* at ¶ 8. This resulted in phantom shapes appearing and then fading from Defendant's vision. *Id.*

Immediately prior to the accident, Defendant recalls slowing down to around 30-35 mph as a precaution because of the difficulty Defendant was having with his eyes adapting to the dark environment. *Declaration of Costanza*, ¶ 9. Defendant then recalls seeing a few indistinct animals on the right of the roadside, and then on the left of the roadside, and Defendant recalls tapping his breaks further when the accident occurred. *Declaration of Costanza*, ¶ 9. Therefore, Defendant's speed at the time of the accident was no greater than 25-35 mph, but it is difficult to estimate exactly. *Id.* Nonetheless, A. Barbay's inference in this regard is wrong. Both Barbay Rangers drew incorrect inferences from Defendant's statement as to his speed and they failed to receive a complete report of Costanza's driving behavior.

A. Barbay's Supplemental Report states that, "He doesn't know what happened to cause him to hit the animals," but this narrative is not entirely accurate either. *Def. Exh. 1.* A. Barbay questioned Defendant as to why Defendant thought the accident occurred, and Defendant recalls telling A. Barbay at the time that perhaps he was experiencing jetlag, which Defendant thought might have contributed to the photo-bleaching issues described above. *Id.* at ¶ 10. Beyond that, Defendant was not so tired or fatigued as to make his driving unsafe. *Declaration of Costanza*, ¶ 11.

Finally, hindsight also aid's Defendant's recollection and observation that the 1999 Green Volvo Defendant was driving, as accurately reflected in the government's photo log, was seated low to the ground and the front headlights were older and with a shorter throw-distance than they otherwise would be in a newer, higher seated vehicle. *Declaration of Costanza,* ¶ 12; *Def. Exh. 1.* This fact, coupled with the photobleaching issue, may also help explain why Defendant did not see the bison on the road earlier in order to avoid the collision.

Defendant also recalls that the background and road were exceedingly dark. *Declaration of Costanza,* ¶ 13. Ranger S. Barbay's photolog accurately reflects just how dark the outside was from multiple vantage points. *Def. Exh. 1, Photolog, pp. 1-2.* This darkness and lack of adequate lighting on the road are undisputed facts in this matter. Recent press reports on bison accidents mention that Bison's eyes are non-reflective, which would be consistent with Defendant's recollection of having difficulty seeing their dark bodies against a dark backdrop like those conditions experienced that night by Defendant at Elk Ranch Flats. *Id.*

These additional facts provided by Defendant cannot reasonably be disputed and reflects that Defendant was not operating his motor vehicle at the time of the accident without due care or at a speed greater than that which is reasonable and prudent. Costanza considered the wildlife, traffic, weather, road and light conditions

and road character that night. With no inclement weather, little traffic and a dark road, Defendant took care in his driving, but nonetheless found the accident unavoidable at his reduced speed, given the dark animals on the road, some photobleaching of Defendant's eyes, and the condition of the 1999 Volvo's headlights. It is possible the bison were not properly illuminated or stepped into Costanza's illumination too late to avoid a collision. The result is tragic but not the product of Costanza's misjudgment in these circumstances.

## Conclusion

The government's claim must be dismissed because the undisputed facts establish that Defendant could not have committed the offense for which he was indicted. For these reasons, this Court should dismiss the government's complaint.

DATED this 14th day of April, 2023.

*Pro Se Defendant*


/s/ Gregory G. Costanza
Gregory G. Costanza, Esq.

DEFENDANT'S
EXHIBIT 1

Plaintiff's Violation Notice and Statement of Probable Cause

Plaintiff's Supplementary Report of A. Barbay

Plaintiff's Photo Log of Dark Night – pp. 1-2 of 3

# UNITED STATES DISTRICT COURT VIOLATION NOTICE

## United States District Court
### Violation Notice

| Location Code | Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|---|
| WGT | 9126063 | S. BARBAY | 20 |

**YOU ARE CHARGED WITH THE FOLLOWING VIOLATION**

| Date and Time of Offense | Offense Charged ☒ CFR ☐ USC ☐ State Code |
|---|---|
| 10/07/2022  0100 hrs | 36 CFR 4.22(b)(1) |

**Place of Offense:** ELK RANCH FLATS HWY 89 GRAND TETON NAT'L PARK WY

**Offense Description: Factual Basis for Charge** ☐ HAZMAT

Unsafe ops: operating motor vehicle without due care

**DEFENDANT INFORMATION**  Phone: (307) 264-2994

| Last Name | First Name | M.I. |
|---|---|---|
| COSTANZA | GREGORY | G |

Street Address:

| City | State | Zip Code | Date of Birth |
|---|---|---|---|
| CODY | WY | 82414 | |

| Drivers License No. | CDL ☐ | D.L. State | Social Security No. |
|---|---|---|---|
| | | WY | |

☒ Adult  ☐ Juvenile   Sex ☒ Male ☐ Female   Hair BR   Eyes BR   Height 5'7"   Weight 155

**VEHICLE**  VIN: VV1LS55AXX261947  ☐ CMV

| Tag No. | State | Year | Make/Model | PASS ☐ | Color |
|---|---|---|---|---|---|
| 1L24853 | WY | '99 | VOLVO | | GR |

**APPEARANCE IS REQUIRED**
A ☒ If Box A is checked, you must appear in court. See instructions.

**APPEARANCE IS OPTIONAL**
B ☐ If Box B is checked, you must pay the total collateral due or in lieu of payment appear in court. See instructions.

$ ~~Forfeiture Amount~~
+ $30 ~~Processing Fee~~

**PAY THIS AMOUNT AT**
www.cvb.uscourts.gov → $ ~~Total Collateral Due~~

**YOUR COURT DATE**
(If no court appearance date is shown, you will be notified of your appearance date by mail.)

| Court Address: U.S. DISTRICT COURT  145 EAST SIMPSON  JACKSON, WY 83001  (307) 227-7020 | Date: 12/13/2022   Time: 0900 |
|---|---|

My signature signifies that I have received a copy of this violation notice. It is not an admission of guilt. I promise to appear for the hearing at the time and place instructed or in lieu of appearance pay the total collateral due.

X Defendant Signature: MAILED  S.B. #20

Original - CVB Copy

---

**Location Code WGT**
**Citation Number - 9126063**
**NPS Case Number NP22313279**
**Ranger Last Name – Barbay, S., #20**

☒ AUDIO OR VIDEO PRESENT (Check Box if Yes)

### STATEMENT OF PROBABLE CAUSE
(for issuance of an arrest warrant or summons)

I state that on 10/7/2022 while exercising my duties as a law enforcement officer in the Federal District of Wyoming -

At approximately 0100 hours, I, Ranger Shelby Barbay, received a page from Teton County Sherriff's Office dispatch regarding a single motor vehicle collision with bison within Grand Teton National Park. The report indicated that the vehicle was unoccupied.

I located the vehicle, a green Volvo (WY/1L/24853), in the northbound lane, half in the lane and half in the shoulder, in the vicinity of Elk Ranch Flats on HWY 89. The vehicle was unoccupied. I observed significant damage to the front end, engine block, front quarter panels, and roof of the vehicle. I observed blood on the steering wheel, center console, driver's side door, trunk, and on belongings within the rear passenger seat and trunk of the vehicle. I also observed 3 deceased bison approximately 200 yards south of the vehicle.

Another Ranger spoke with the registered owner of the vehicle, Gregory COSTANZA, later that day. COSTANZA stated to that Ranger that he thought he was traveling 55 MPH. That area of HWY 89 is 45 MPH at night and 55 MPH during the day. Additionally, that location is frequently traveled for bison herds and there is a history of motor vehicle collisions with wildlife.

I cited COSTANZA a mandatory court appearance (VN: 9126063) for 36 CFR 4.22(b)(1): unsafe operations: operating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character.

The foregoing statement is based upon:
☒ My personal observation    ☒ My personal investigation
☒ Information supplied to me by my fellow officer's observation
☐ Other (explain)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 10/07/2022    Shelby Barbay
Date (mm/dd/yyyy)    Officer's Signature

Probable cause has been stated for the issuance of a warrant.

Executed on: _____
Date (mm/dd/yyyy)    U.S. Magistrate Judge

# Supplementary Incident Report

**U.S. Department of the Interior, National Park Service**
*Printed:* 03/29/2023 11:39 by 389
*Incident:* **NP22313279 Motor Vehicle Crash @10/07/2022 06:24**

Author: #829 BARBAY, A.
Entered by: #829 BARBAY, A.

Report time: 03/24/2023 11:30
Entered time: 03/24/2023 11:30

**Report:**

On October 7th, 2022, at approximately 09:00 I went to the area where a vehicle had struck three bison earlier that morning to make sure the driver wasn't injured in the ditch. When Ranger Shelby Barbay responded to the initial call, there was no driver with the disabled vehicle, and it was still dark.

At approximately 09:42 as I was in my vehicle getting ready to leave the area when a black taxi pulled up and a male got out and waved at me to come talk to him. After speaking with him briefly I realized he was the driver from the collision and activated my body camera.

I identified the male as Gregory COSTANZA by his name and date of birth. I collected COSTANZA's information to give to the investigating ranger, Shelby Barbay.

COSTANZA told me he was at a conference in Jackson and was heading home to Cody. He had seen some elk and slowed down then began to speed up when he hit the bison. He estimated he was going 55-60mph when he hit the bison. He doesn't know what happened to cause him to hit the animals. COSTANZA didn't know what he had hit until I told him. Someone passing by gave COSTANZA a ride to town since he didn't have cell service. He also stated he reported the accident to highway patrol.

I advised COSTANZA to go to the hospital because he may have a concussion. I also told him that Ranger S. Barbay would be contacting him with more questions and to arrange the return of his belongings.

I cleared the scene at approximately 09:58.

--END OF REPORT--

| SUBJECTS NAME: | COSTANZA, G | Photo Log | CASE NUMBER: | NP22313279 |
|---|---|---|---|---|
| PHOTOS TAKEN BY: | Ranger S. Barbay, #20 | Pg 1 | DATE OF PHOTO: | 10/07/2022 |



**PHOTO #1**

**DESCRIPTION**: Rear of vehicle.



**PHOTO #2**

**DESCRIPTION**: Driver's side of vehicle.



**PHOTO #3**

**DESCRIPTION**: Front of vehicle.

**PHOTO #4**

**DESCRIPTION**: Front of vehicle.



| SUBMITTED BY (SIGNATURE AND DATE) | APPROVED BY (SIGNATURE AND DATE) |
|---|---|
|  |  |

| SUBJECTS NAME: | COSTANZA, G | Photo Log | CASE NUMBER: | NP22313279 |
|---|---|---|---|---|
| PHOTOS TAKEN BY: | Ranger S. Barbay, #20 | Pg 2 | DATE OF PHOTO: | 10/07/2022 |



**PHOTO #5**

**DESCRIPTION**: Roof/windshield of vehicle.



**PHOTO #6**

**DESCRIPTION**: Engine compartment of vehicle.



**PHOTO #7**

**DESCRIPTION**: Engine compartment of vehicle.



**PHOTO #8**

**DESCRIPTION**: Passenger's side of vehicle.

| SUBMITTED BY (SIGNATURE AND DATE) | APPROVED BY (SIGNATURE AND DATE) |
|---|---|
| | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING, YELLOWSTONE NATIONAL PARK

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Gregory G. Costanza,<br><br>    Defendant. | Case No. L:22-po-00702-SAH-1<br><br>Hon. Stephanie A. Hambrick<br><br>DECLARATION OF GREGORY COSTANZA IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS<br><br>Fed. Rule Crim. P. 12(b)(2) |

COMES NOW Defendant Gregory G. Costanza ("Costanza"), with this Declaration in support of his Rule 12(b)(2) Motion to Dismiss, and states as follows:

I, Gregory G. Costanza, being of the age of majority, do upon my oath and under penalty of perjury declare and say:

1. I was the driver of the 1999 Green Volvo that was involved in the motor vehicle accident the night of October 6, 2022 around Elk Ranch Flats involving several bison.

2. I spoke with a responding Ranger, "A. Barbay" the morning after the accident, at some time prior to 10:00 am on October 7, 2022.

3. I was heading home to Cody from Jackson the night of October 6, 2022 after attending the Wyoming Global Technology Summit that day.

4. The accident occurred approximately after 10:00 pm and before 11:00 pm in the vicinity of

Elk Ranch Flats on Highway 89.

5. That evening I was initially driving north away from Jackson generally going no faster than 55 mph.

6. Prior to the accident, I saw almost a dozen elk streaming from west to east across the road, causing me to almost stop my vehicle, thus decelerating from around 50-55 mph to 5-10 mph before the elk quickly cleared from the road.

7. I then began to speed up, but at a much-reduced maximum speed. I estimate I was going no faster than 40-45 mph after accelerating past the elk. Their presence on the road served as a warning signal for me to drive slower, which I did, but this still did not prevent the accident.

8. After accelerating post-elk, I recall experiencing unusual difficulty with my night vision. I remember experiencing heightened retinal photobleaching after passing several vehicles and the blinking "45 mph" sign. This resulted in phantom shapes appearing and then fading from my vision.

9. Immediately prior to the accident, I recall slowing down to around 30-35 mph as a precaution because of the difficulty I was having with my eyes adapting to the dark environment.

    a. I then recall seeing a few indistinct animals on the right of the roadside, and then immediately seeing more animals on the left of the roadside, and I recall tapping my breaks further just prior to when the accident occurred.

    b. At the time of the accident, I was driving no faster than 25-35 mph, but it is difficult to estimate exactly. I know I was not traveling at 45-55 mph.

    c. I did not know exactly what I had struck but believed it to be two elk when the driver who picked me up exclaimed as much and we both peered in the night at the side of the road to confirm two animals were in close vicinity to the accident site.

    d. With only a cut hand, I was not so injured to warrant emergency attention and I was fortunate to have a stranger stop and give me a ride back to Jackson, as the Elk Ranch Flats area had no cell phone reception.

    e. After cleaning up, I called the Wyoming Highway Patrol, a tow company, and my insurance agent to explain the situation and get more information about how to proceed. I then hired a taxi to drive me back to the Volvo, but the Park Ranger had it towed back to Jackson by the time I spoke with Ranger A. Barbay.

10. As to the cause of the accident, I recall telling Ranger A. Barbay the next morning that perhaps I was experiencing jetlag, which I thought might have contributed to the photo-bleaching issues my eyes experienced as described here.

11. However, I was not so tired or fatigued as to make my driving unsafe. I had a full night's rest the prior night and felt energetic enough to drive home the evening of October 6, 2022. I did not fall asleep nor was I intoxicated in any way that evening.

12. The 1999 Green Volvo I was driving was seated low to the ground and the front headlights were older and with a shorter throw-distance than they otherwise would be in a newer, higher seated vehicle. This might have been a contributing factor to the accident, along with the photo-bleaching issue, and the difficulty seeing the dark bison against a dark background.

13. I remember distinctly how dark the night was around the Elk Ranch Flats area. I had not

previously driven through this area at night, and I am generally unfamiliar with this stretch of road, as I do not frequently travel to Jackson. My unfamiliarity with this road and area, combined with the dark night and dark animals, certainly contributed to the accident, as I could not see the bison as I would have been able to during the day.

14. In the future this accident will make me consider staying in town instead of driving at night and using an extra light bar to better illuminate the road, hopefully without causing photobleaching in passing vehicles like what I experienced that evening.

DATED this 14th day of April, 2023.

_____
Gregory G. Costanza